# IN THE COURT OF APPEALS OF IOWA

No. 24-0720
Filed July 2, 2025

**ESTATE OF KARA B. TORNELL and PRESTON H. TORNELL, both individually and in his administrator capacity,**
Plaintiffs-Appellants,

**vs.**

**TRINITY HEALTH CORPORATION; CATHOLIC HEALTH INITIATIVES-IOWA CORP., d/b/a MERCYONE WEST DES MOINES MEDICAL CENTER; MERCYONE WEST DES MOINES; WILLIAM E. NOWYSZ, WILLIAM NOWYSZ, P.C.; DES MOINES RIVER PHYSICIANS, LLC; RYAN BRIMEYER and THE IOWA CLINIC, P.C.,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

A husband appeals the dismissal of a wrongful death action that he filed as administrator of his late wife's estate and in his individual capacity. **AFFIRMED**.

S.P. DeVolder (argued) of The DeVolder Law Firm, P.L.L.C., Norwalk, for appellants.

Ryan P. Tunink (argued) and Frederick T. Harris of Lamson Dugan & Murray LLP, West Des Moines, for appellee Catholic Health Initiatives-Iowa Corp.

Jennifer E. Rinden, Vincent S. Geis, and Eric P. Martin of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees Nowysz, William Nowysz, P.C., and Des Moines River Physicians, LLC.

Stacie M. Codr, Jeffrey R. Kappelman, and Peter R. Lapointe of Finley Law Firm, P.C., Des Moines, for appellees Brimeyer and The Iowa Clinic, P.C.

Heard at oral argument by Tabor, C.J., and Greer, Chicchelly, Langholz, and Sandy, JJ.

**TABOR, Chief Judge.**

Preston Tornell appeals the dismissal of his petition against Catholic Health Initiatives (CHI)[1] for the wrongful death of his wife, Kara. Preston—who is not an attorney—represented himself both as an individual and as the administrator of the estate, which the district court found to be the unauthorized practice of law. Finding Preston's filings were void, the court dismissed his claims without prejudice.

On appeal, Preston contends that he could proceed pro se because Kara died without a will and he was the sole beneficiary of her estate. Short of that, he maintains that the court should have allowed him to amend his petition or granted him more time to hire an attorney. Because the dismissal was proper, we affirm.

## I.    Facts and Prior Proceedings

In December 2021, Kara experienced sudden "back pain, shortness of breath, low blood pressure, low pulse oxygen, and discolored tissues."[2] She went by ambulance to the emergency department at MercyOne in West Des Moines, where she received treatment from several doctors. Her condition deteriorated rapidly. After experiencing cardiac arrest, cardio-pulmonary resuscitation, and many medical procedures to stabilize her, Kara was admitted to the critical care department. Her prognosis was "uncertain" because of a prolonged lack of oxygen. The next day, "with treatments exhausted and with no hope for recovery,"

---

[1] CHI and MercyOne West Des Moines Medical Center have different counsel than defendants Ryan Brimeyer and The Iowa Clinic. Des Moines River Physicians, William E. Nowysz, and William Nowysz P.C. also have separate representation. But the defendants' district court filings all track one another, and they filed one appellees' brief, so we refer to them collectively as CHI.

[2] We take these facts from Preston's petition.

Preston made "the devastating decision to remove [Kara] from life support," and she soon died.

Preston sued CHI, alleging five wrongful death claims against the hospital, its associated clinics, and its medical providers.[3]  Listed as plaintiffs were the Estate of Kara B. Tornell; Preston, as administrator of the estate; and Preston, in his individual capacity.[4]  Preston represented all plaintiffs throughout the proceedings until this appeal.

CHI answered and asserted as affirmative defenses that Preston's petition failed to state a claim for which relief could be granted and amounted to the "illegal practice of law."  CHI then moved to dismiss,[5] citing Iowa Rules of Civil Procedure 1.421(1)(f) and 1.421(4).  CHI argued that the petition failed to state a claim on which the court could grant relief because Preston's "attempt to bring claims on behalf of the Estate" without an attorney "amounts to the unauthorized practice of law."  According to CHI, because Preston could only represent himself, all claims "brought on behalf of someone other than Mr. Tornell personally [were]

---

[3] The petition, which the district court described as "prolix," alleged:
    1. Wrongful death due to negligence of the hospital.
    2. Wrongful death due to negligence of the clinic.
    3. Wrongful death due to "negligence, gross negligence, and/or recklessness" of Dr. Nowysz.
    4. Wrongful death due to negligence of Dr. Brimeyer.
    5. Wrongful death due to "negligence, gross negligence, and/or recklessness" of Des Moines River Physicians.
    Each count asserted damages of "great (past and future) mental anguish, loss of consortium, loss of society, loss of service, grief, loss of normal life, loss of enjoyment and quality of life, anxiety and depression," loss of Kara's future earnings, medical expenses, and "other expenses for the needs of the Plaintiffs."
[4] The Tornells' seven children were not listed as plaintiffs.
[5] Each of the three groups of defendants filed its own post-answer motion to dismiss, all of which relied on substantially the same reasons.

a legal nullity." And CHI argued that by statute only the estate could assert the loss-of-consortium claims, so they had to be dismissed for that reason as well.

Just before a hearing on the motion to dismiss, Preston moved for leave to amend his petition to allege that Kara died intestate and that he "is the only beneficiary and distributee of her estate."[6] The court did not rule on the motion to amend before the hearing.

At the hearing, CHI reiterated its argument that Preston could not bring claims "on behalf of someone other than his natural person, which is the children and the estate. The estate, by statute, is the only entity or person who is capable of bringing the claims that Mr. Tornell seeks to present." CHI continued: "By virtue of that, he is engaged in an unauthorized practice of law by presenting those claims." In CHI's view, that unauthorized practice rendered the petition void, and "a void petition can't state a claim, which is why we're asking the Court dismiss these claims." Preston countered: "I am not representing anyone other than myself. No one other than myself would be prejudiced from my lack of knowledge or experience in the courtroom." The district court asked for proposed orders from the parties. In his proposed order, which Preston docketed as a brief, he suggested for the first time that "if pro se representation is not allowed," the appropriate remedy was to allow him thirty days to hire counsel.

---

[6] That same day, on behalf of the plaintiffs, Preston filed a "sur-reply and additional authorities." In that filing, Preston suggested to the district court that it could take judicial notice of the probate proceedings. But he does not renew that suggestion on appeal. Both his motion to amend and sur-reply noted that they were prepared with help from a named attorney but clarified that such assistance did not constitute an entry of appearance by that attorney.

To start its order, the district court treated the motion to dismiss under rule 1.421 as a motion for judgment on the pleadings under rule 1.954. The court then offered three lines of analysis.

One, for the claims on the estate's behalf, the court found that Preston could not act as counsel on behalf of a separate entity.

Two, for the claims brought as administrator of the estate, the court cited Iowa Code section 633.81 (2023), which provides the fiduciary "may sue, be sued and defend *in such capacity*." (Emphasis added.) The court found that statute "does not provide authority for an estate's administrator to practice law on the estate's behalf."

Three, for the claims that Preston brought as an individual, the court cited Iowa Code section 613.15, which permits an injured person or the administrator of the estate of a deceased person to recover the value of "services and support as spouse or parent, or both." And the court cited *Nichols v. Schweitzer*, 472 N.W.2d 266, 271 (Iowa 1991), which explained: "To avoid a double recovery, section 613.15 designates the personal representative of the deceased as the proper party to bring a suit for the loss of consortium of the deprived spouse. The independent claim of the deprived spouse thus passes to the administrator on death of the injured spouse." Thus, Preston's loss-of-spousal-consortium claims could be brought only by the administrator of Kara's estate, and he could not act as counsel for himself in the capacity of administrator.

At bottom, the court found that because Preston could not pursue any of the claims, his pleadings had "no force and effect." So the court dismissed his petition without prejudice. That dismissal ended the court's analysis. The court viewed

Preston's motion for leave to amend as "further engagement in the unauthorized practice of law" and treated it as moot. The court did not address the suggestion in Preston's proposed order that the proper remedy was more time to hire an attorney. Preston did not file a motion under Iowa Rule of Civil Procedure 1.904(2) to ask the court to address that argument. Now represented by counsel, Preston challenges the order dismissing his petition.

## II.     Scope and Standards of Review

We review motions to dismiss for correction of errors at law. *MIMG CLXXII Retreat on 6th, LLC v. Miller*, 16 N.W.3d 489, 492 (Iowa 2025). The same standard applies to issues of statutory interpretation. *Cianzio v. Iowa State Univ.*, 14 N.W.3d 716, 719 (Iowa 2024). When the issue is preserved, we review the denial of a motion for leave to amend for an abuse of discretion. *Struve v. Struve*, 930 N.W.2d 368, 375 (Iowa 2019).

We first strive to pinpoint the ground for dismissal. CHI moved to dismiss under rule 1.421, arguing that Preston lacked authority to bring the wrongful death claims. The district court took a different approach, treating the defense filings as motions for judgment on the pleadings as provided in rule 1.954.

We recognize that "in many respects a motion for a judgment on the pleadings is reviewed in a similar manner" to a motion to dismiss. *Stanton v. City of Des Moines*, 420 N.W.2d 480, 482 (Iowa 1988). "Just as facts set forth in a plaintiff's petition are accepted as true in deciding a motion to dismiss for failure to state a claim upon which any relief may be granted, *Smith v. Smith*, 513 N.W.2d 728, 730 (Iowa 1994), so they are accepted as true in deciding a defendant's motion for judgment on the pleadings." *Meek v. State*, No. 01-1334, 2002 WL

31882881, at *1 (Iowa Ct. App. Dec. 30, 2002). Thus, for today's review, we accept as true the facts alleged in Preston's petition.

## III. Discussion

In seeking reinstatement of his petition, Preston contends that the district court "committed a two-fold error in its analysis." In his framing, the first alleged error involves the "demanding dismissal standard" and the court's refusal to accept that he "singularly was entitled to recovery in the medical malpractice case." He describes the second alleged error as the court's legal misinterpretation "of when a sole spouse and administrator of an estate can proceed pro se." Beyond attacking the dismissal, Preston argues the court should have granted his motion for leave to amend or his request for another thirty days to hire counsel to prosecute the claims.[7]

*Error preservation.* CHI counters with cascading error preservation arguments. As its most sweeping assertion, CHI reasons that because Preston's filings were void as products of the unauthorized practice of law, nothing was preserved. That argument puts the cart before the horse. We cannot presuppose that Preston could not act pro se before entertaining his arguments that he could. Thus, we reject that broad preservation argument.

In two more narrow responses, CHI urges that Preston failed to preserve error on his argument that he was the estate's sole beneficiary because the court

---

[7] On the first point, he notes that if the amendment was even necessary, it did not change any substantive issues in the wrongful death suit—so the medical providers would not have been prejudiced. On the second point, he contends that allowing him time to appear with counsel would have "cured any technical defect that might otherwise have supported the early and perfunctory dismissal of [his] claims."

did not rule on his motion to amend.[8]  CHI also argues that Preston failed to preserve error on his alternative request for time to hire an attorney because he raised it only in his proposed order and did not secure a ruling.  We agree with CHI on both points.

Contrary to Preston's argument, the district court did not deny his motion to amend on the merits.  Rather, the court did not rule on that motion because it had already dismissed the petition.[9]  We can only address issues on appeal when they were raised *and decided* by the district court.  *Minnesota Laws. Mut. Ins. v. Rasmussen, Nelson & Wonio, PLC*, 15 N.W.3d 791, 797 n.1 (Iowa Ct. App. 2024).  As for time to hire counsel, floating that request for the first time in his proposed order did not preserve error.  *See Woods v. Charles Gabus Ford, Inc.*, 962 N.W.2d 1, 5–6 (Iowa 2021).  Because Preston did not preserve error on either his proposed amendment or his request for time to hire counsel, we limit our review to his objections to the district court's ruling on the unauthorized practice of law.

*Merits*.  In contesting that ruling, Preston argues that his claims for loss of consortium, both before and after Kara's death, are "his property regardless of his status as sole beneficiary of the estate."  In his view, because he has "the exclusive right" to the recovery of those damages, he was not disqualified from appearing pro se.  CHI counters that Preston conflates "the right to recovery of damages and the ability to present the claim before the court."

---

[8] In his resistance to the motion to dismiss, Preston also asserted that his interests as sole beneficiary aligned with the interests of the estate.  CHI countered that claim in its reply, arguing that Iowa courts have not recognized an aligned-interest exception to the prohibition on unauthorized practice of law.  But the district court did not address the alignment argument in its order.

[9] Preston offers no authority suggesting that the court had to consider his motion to amend before ruling on CHI's motion to dismiss.

We start with that second concept—authorization to present claims in court. Our supreme court requires anyone practicing law to be admitted to the bar. *Bergantzel v. Mlynarik*, 619 N.W.2d 309, 312 (Iowa 2000).[10]   But there is an exception—litigants have the right to appear in court pro se.[11]  *See Metz v. Amoco Oil Co.*, 581 N.W.2d 597, 599 (Iowa 1998).  Thus, "while a natural person may appear for himself," they generally cannot appear on behalf of another person or entity.[12]  *See Hawkeye Bank & Tr., Nat'l Ass'n v. Baugh*, 463 N.W.2d 22, 23 (Iowa 1990) (citation omitted) (finding that in a fraud action against a corporation, a non-lawyer shareholder could not act as counsel for the corporation).

Not only are laypeople prohibited from representing corporations, *id*. at 25, but we have held that a non-attorney father could not, as next friend, represent his minor child "pro se" in a personal injury suit.  *Yulin Li ex rel. Lee v. Rizzio*, 801 N.W.2d 351, 358 (Iowa Ct. App. 2011).  Preston tries to distinguish *Rizzio*—saying it "simply stands for the proposition that an individual who has the right to the recovery of all or some of the claims presented can pursue those claims in a pro se capacity but cannot at the same time represent pro se other parties on claims to which the right of relief belongs to those parties."  But *Rizzio* stands for more. In *Rizzio*, we recognized that Iowa Rule of Civil Procedure 1.201 permitted a father

---

[10] "Practicing law" has no single definition, but Preston does not dispute that is what he did before the district court.  *See Bergantzel*, 619 N.W.2d at 312 (noting difficulty of identifying what activities qualify as practicing law).  At a minimum, "the practice of law includes the obvious: representing another before the court." *Comm. on Pro. Ethics & Conduct of the Iowa State Bar Ass'n v. Baker*, 492 N.W.2d 695, 701 (Iowa 1992).

[11] "Pro se" is a Latin term meaning "[f]or oneself; on one's own behalf; without a lawyer."  *Pro se*, Black's Law Dictionary (12th ed. 2024).

[12] Iowa statutes define "entity" as including estates.  *See*, *e.g.*, Iowa Code §§ 490.140(20), 504.141(16).

to bring a personal injury lawsuit on behalf of his son as next friend. 801 N.W.2d at 360. Yet that rule did not "create an exception allowing a non-attorney parent to actually litigate the child's claim in court." *Id*. at 361. Likewise, Preston's authority to represent the estate as a fiduciary in a lawsuit—under Iowa Code section 633.81—does not allow him to prosecute that action pro se.

By enforcing the rule prohibiting non-lawyers from representing other people or entities, our courts aim to protect the judicial system and the public from "ineptitude and delay at the hands of persons who are unskilled as well as unlicensed in the practice of law." *Hawkeye Bank & Tr.*, 463 N.W.2d at 24. And, according to CHI, Preston violated this rule "by presenting claims to the court that, by statute, can only be presented by the estate's personal representative *as* the personal representative."[13]

Returning to the first concept—Preston's right to recover damages—without the amendment alleging that he was "the only beneficiary and distributee" of Kara's intestate estate, we cannot entertain his claim that "the tort action singularly belonged to him and to no other beneficiaries of the estate." Under the facts as pled in the petition, Preston was acting in his capacity as the administrator of Kara's estate. To the extent that the petition alleged his individual loss of consortium and other harms,[14] the right to recover those wrongful death damages also vested in

---

[13] "Personal representative" includes both "executors" appointed by the court to administer the estate of a testate decedent and "administrators" appointed to oversee an intestate estate. Iowa Code § 633.3(1), (18), (33). The definition of "fiduciary" also includes administrators. *Id*. § 633.3(19).

[14] Preston insists that his petition does not include claims on behalf of his children. CHI disputes that point, noting that Preston asked the district court not to dismiss the children's claims. On appeal, Preston makes a passing reference to claims for monetary damages that "may belong to minor or adult children."

the administrator. *See Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 312 (Iowa 1982); *Condon v. Emps. Mut. Cas. Co.*, 529 N.W.2d 630, 632 (Iowa Ct. App. 1995) ("[E]ven though the widow and the administrator are the same person, they are two distinct entities.").

"Iowa Code section 611.22 provides that only the legal representative has authority to bring the action, whereas Iowa Code sections 613.15 and 633.336 outline the measure of recovery and provide for the apportionment of the recovery between the spouse, parent, and the estate." *Troester*, 328 N.W.2d at 312. So the district court correctly found that Preston's individual claims passed to the administrator, and nothing in the probate code grants an administrator the authority to practice law on the estate's behalf.

To be clear, Preston offers non-binding federal authority in support of his position that he can proceed pro se because any damages recovered in the medical malpractice suit would "solely belong to him" because Kara died without a will and he inherits all her property. For instance, he cites *Pridgen v. Andresen*, where the Second Circuit entertained and left open the possibility that an administrator or executor "who is the sole beneficiary of an estate without creditors may appear pro se on its behalf" but ultimately reiterated that she couldn't because there were others interested in the estate. 113 F.3d 391, 393 (2d Cir. 1997).[15]

---

[15] *Pridgen* relied on *Reshard v. Britt*, another federal case where a non-attorney personal representative of an estate successfully appealed a district court order disqualifying her from serving as counsel for the estate and survivors in a wrongful death action. 819 F.2d 1573, 1582 (11th Cir. 1987) (interpreting 28 U.S.C. § 1654, which permits parties to self-represent in "their own cases personally," and a Florida statute, allowing self-representation if the personal representative is also the "sole interested party" in the estate, to allow the parties to proceed pro se). A dissenting judge would have found that the personal representative was "litigating interests which are not personal to her" because there were other survivors and

And, in *Iannaccone v. Law*, the Second Circuit permitted a decedent's son and administrator to act pro se in a limited matter involving social security benefits where federal statute directed he would receive the funds in his personal capacity. 142 F.3d 553, 558–60 (2d Cir. 1998). But those authorities do not advance Preston's position when he did not plead the facts necessary to show that he was the estate's sole interested party.

As pleaded, Preston's wrongful death claims had to be brought in his capacity as administrator of Kara's estate, and he could not act in that capacity without counsel. *See Rizzio*, 801 N.W.2d at 360 ("Although our state law allows pro se litigants to represent their *own* claims, it does not authorize pro se litigants to prosecute the claims of *others*."). Because Preston engaged in the unauthorized practice of law, his petition was void and a legal nullity. *Id.* at 364. Thus, we affirm the dismissal of his action without prejudice.

**AFFIRMED.**

Greer and Chicchelly, JJ., concur; Langholz and Sandy, JJ., dissent.

---

creditors interested in the estate. *Id.* at 1583 (Roney, C.J., dissenting). The Eleventh Circuit reheard the case en banc, vacating the panel decision and dividing evenly so that the district court decision was affirmed by operation of law. *Reshard v. Britt*, 839 F.2d 1499, 1499 (11th Cir. 1988) (per curiam) (en banc).

**LANGHOLZ, Judge** (dissenting).

In the name of policing the unauthorized practice of law, the district court dismissed this wrongful-death suit without first giving the improperly represented plaintiffs the chance to hire a lawyer to proceed with the suit. And the majority affirms without considering this error because the plaintiffs allegedly did not do enough to preserve error on the violation of their right to get this chance. I am skeptical that the plaintiffs needed to do anything more than resist dismissal to preserve error on this point. But even if they had to separately preserve error, the plaintiffs presented the issue to the district court and the court decided it by refusing to give them a chance to hire a lawyer and instead dismissing their claims outright. Because the district court's decision flouts precedent and the principles underlying our unauthorized-practice-of-law doctrine, I would reverse the dismissal and remand for the district court to enter an order dismissing the case only if no lawyer appears for the plaintiffs within thirty days of that order.

**I.      The Proper Remedy for the Unauthorized Practice of Law**

No statute expressly authorizes the dismissal of a lawsuit because the plaintiff is improperly represented by a nonlawyer engaged in the unauthorized practice of law. But under its exclusive power "to admit persons to practice as attorneys and counselors in the courts of this state," Iowa Code § 602.10101 (2023), our supreme court has created the Commission on the Unauthorized Practice of Law, *see* Iowa Ct. R. 37.1. And the court has authorized the commission to seek an injunction in the district court to stop "any person who has not been admitted to practice law within this state" from "engaging in the practice of law or holding out to the public that the person is qualified to provide services

constituting the practice of law in this state." Iowa Ct. R. 37.2(1). So too has the court recognized that courts have both the inherent power and statutory authority to punish unauthorized practice of law by contempt. *See Bump v. Dist. Ct.*, 5 N.W.2d 914, 916–17 (Iowa 1942); *see also* Iowa Code § 665.3(2) (authorizing courts of record to punish as contempt "[a]ssuming to be an officer, attorney, or counselor of the court, and acting as such without authority"). And the court has held that when courts are faced with a nonlawyer appearing before them representing another party in a proceeding, they may stop the nonlawyer from engaging in the unauthorized practice of law. *See Hawkeye Bank & Tr., Nat'l Ass'n v. Baugh*, 463 N.W.2d 22, 23–26 (Iowa 1990) (affirming district court's ruling that nonlawyer could not continue to represent the defendant, a closely held corporation of which the nonlawyer was not the sole shareholder, at trial because he would be engaged in the unauthorized practice of law).

Following this last strain of enforcement authority, our court has struck an appellant corporation's brief filed by a nonlawyer corporate officer and ordered that the appeal would be dismissed if a lawyer did not appear to represent the corporation within thirty days. *See Timberline Builders, Inc. v. Donald D. Payne Tr.*, No. 09-0168, 2010 WL 2383916, at *5 (Iowa Ct. App. June 16, 2010).[16] Our supreme court routinely does the same on its motions docket when an improperly represented party is spotted before the submission of an appeal. *See, e.g., Foge Invs., L.L.C. v. First Nat'l Bank of Wahoo*, No. 14-0572, 2015 WL 4158768, at *2 n.4 (Iowa Ct. App. July 9, 2015) (noting that after an LLC and a corporation filed a

---

[16] When no lawyer appeared by a further-extended deadline, we then dismissed the appeal. *See Timberline Builders, Inc. v. Donald D. Payne Tr.*, No. 09-0168, 2010 WL 4105460, at *1 (Iowa Ct. App. Oct. 20, 2010).

notice of appeal without an attorney, the supreme court issued orders giving the appellants a chance for an attorney to appear and denying the appellee's motion to dismiss). And we have vacated adverse judgments against both plaintiffs and defendants who were improperly represented by nonlawyers when the judgment was entered. *See Yulin Li ex rel. Lee v. Rizzio*, 801 N.W.2d 351, 363 (Iowa Ct. App. 2011) (vacating judgment against plaintiff child who was improperly represented by his nonlawyer parent at trial); *Steensma v. Buysman, Inc.*, No. 17-0693, 2018 WL 2725320, at *6 (Iowa Ct. App. June 6, 2018) (vacating summary judgment against defendant corporation because shareholder was improperly representing the corporation).

These actions enforcing the unauthorized-practice-of-law prohibition in a pending proceeding all *protected* the improperly represented party. After putting the party on notice that it needed a lawyer, we paused the proceeding to give it a chance to hire a lawyer before taking the adverse action of dismissing the appeal. *See Timberline Builders,* 2010 WL 2383916, at *5. Or when the parties had adverse judgments entered against them while improperly represented by nonlawyers, we vacated those judgments when they sought to do so with the help of counsel. *See Rizzio*, 801 N.W.2d at 363; *Steensma*, 2018 WL 2725320, at *6. Indeed, in explaining why vacating the adverse judgment was the proper remedy for the unauthorized practice, we reasoned that "[n]o other remedy would provide [the improperly represented party] any meaningful benefit." *Rizzio*, 810 N.W.2d at 363. And this makes sense given that protecting the improperly represented party is the core justification for policing the unauthorized practice of law. *See Iowa Sup. Ct. Comm'n on the Unauthorized Prac. of Law v. Sullins*, 893 N.W.2d 864, 875

(Iowa 2017) ("We prohibit unlicensed persons from practicing law for good reason. Every [party] is entitled to receive legal advice from [persons] skilled in law, qualified by character, sworn to maintain a high standard of professional ethics, and subject to the control and discipline of the court." (cleaned up)).

What's more, when a district court enforced the unauthorized-practice-of-law prohibition without protecting the improperly represented party in *Hawkeye Bank and Trust*, the supreme court reversed the resulting judgment and remanded for a new trial. *See Hawkeye Bank & Tr.*, 463 N.W.2d at 26. There, on the morning of trial, the district court prohibited the nonlawyer shareholder from representing the corporate defendant at trial and refused to postpone trial to let the corporation hire an attorney. *See id.* at 23. The bench trial proceeded without any evidence or argument from the corporation, and the district court entered judgment against the corporation for the full relief requested by the plaintiff. On appeal, the supreme court held "that the trial court abused its discretion when it denied [the defendant] a brief continuance to secure counsel for the corporation." *Id.* at 26. The supreme court reasoned—applying the deferential standard of review for trial continuances—that it was unjust to deny the continuance when the court failed to weigh relative prejudice to the parties, the defendant had not caused any unreasonable delay in the proceedings, and the defendant had no reason to secure counsel sooner since no objection had been made to the representation in the pretrial proceedings, including a successful motion to recuse. *See id.*

Mindful of this lay of the land, I would hold that the district court ventured beyond its inherent authority to police the unauthorized practice of law when it dismissed this suit without first giving the plaintiffs notice that they needed to hire

a lawyer and delaying dismissal for a reasonable time for them to do so. The defendants have pointed us to no Iowa precedent approving of such a dismissal. And the very case they rely on the most—*Hawkeye Bank and Trust*—while affirming the court's inherent authority to stop the unauthorized practice of law also reversed the district court's refusal to give the improperly represented party a chance to hire a lawyer. *See id.* To be sure, as the defendants highlight, the facts here are not exactly the same as in *Hawkeye Bank and Trust*. For example, the defendants here did not wait until the morning of trial to object to the plaintiffs' representation by a nonlawyer. But even so, the plaintiffs did not *know* that they would need to hire a lawyer until the court ruled that the nonlawyer was engaged in the unauthorized practice of law. While I agree with that ruling based on the record and arguments here,[17] plaintiffs' arguments were not frivolous. So I would not hold that the plaintiffs had to roll over as soon as the defendants raised unauthorized-practice-of-law concerns or risk losing their chance to hire a lawyer

---

[17] Our court's holding that the nonlawyer's representation of the plaintiffs here was the unauthorized practice of law is a narrow one and should not be overread. Because this is an independent lawsuit, we are not addressing whether an administrator may open and appear in a probate proceeding without an attorney. *Cf. In re Est. of White*, No. 23-1009, 2024 WL 3887438, at *3–4 (Iowa Ct. App. Aug. 21, 2024) (Langholz, J., concurring specially). Given the plaintiffs' acquiescence to considering this unauthorized-practice-of-law issue as a matter of pleading rather than seeking to develop an evidentiary record, we need not decide whether this was the proper procedure for resolving this dispute. *Cf. Harding v. Sasso*, 2 N.W.3d 260, 267 (Iowa 2023) (explaining that court considering motion to dismiss for lack of personal jurisdiction must make factual findings based on evidentiary record). And because of the lack of evidence or pleading about beneficiaries and creditors of the estate and the suit's assertion of claims not just on behalf of the estate but also—according to the plaintiffs' district-court briefing—other family members, we do not decide whether to join those jurisdictions that would permit a self-represented estate administrator to pursue a claim when the administrator is the sole interested party in the estate. *See, e.g.*, *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210–11 (5th Cir. 2016).

and get their day in court.  Indeed, given that the court made its ruling long before trial, early in the case, any prejudice to defendants or interest of judicial economy is even less than in *Hawkeye Bank and Trust*.  The district court's dismissal thus conflicts with the most on point governing precedent.

Setting all that aside, it would also be unwise to extend the inherent authority of courts as far as the district court went here.  Failing to give the plaintiffs a chance to hire a lawyer before dismissal serves no purpose aside from punishment.  But other remedies, like contempt, serve that purpose without harming the very parties that the unauthorized-practice-of-law prohibition protects.  And while I appreciate the defendants' desire to swiftly end the suit, delaying the dismissal of the suit by thirty days is not an unreasonable burden when weighed against the consequences of dismissing the suit.

In deciding against giving the plaintiffs a chance to hire a lawyer to continue with their suit, the district court accepted the defendants' argument that the case had to be dismissed because everything filed, including the original petition was "a legal nullity."  The court reasoned that this conclusion followed from *Rizzio*.  But that's not so.  There, our court only held that that the adverse judgment against the improperly represented party should be voided to give that party meaningful relief. *See Rizzio*, 801 N.W.2d at 363.  That party did not seek a remand for a new trial, so we had no occasion to consider whether everything filed by the nonlawyer engaged in the unauthorized practice of law was a nullity.

Such a broad reading of *Rizzio* would also conflict with the other precedents from both our court and the supreme court giving parties time to hire an attorney.[18] If a notice of appeal were void because it is filed by a nonlawyer engaged in the unauthorized practice of law, we could not give the improperly represented party thirty days to hire a lawyer before dismissing the appeal because we would have no appellate jurisdiction at all. Yet we did. *See Timberline Builders,* 2010 WL 2383916, at *5. Nor could the supreme court take similar actions and deny a request to dismiss the invalid appeal. Yet it did. *See Foge Invs.*, 2015 WL 4158768, at *2 n.4. And if any action in the district court by a nonlawyer engaged in the unauthorized practice of law were a nullity, the district court would never abuse its discretion in denying a motion to continue trial made by such a nonlawyer because there would be no valid motion before the court. Yet again, the supreme court held otherwise.[19] *See Hawkeye Bank & Tr.*, 463 N.W.2d at 26.

True, some other jurisdictions have adopted the nullity approach to the unauthorized practice of law advanced by the defendants. *See Kelly v. St. Francis Med. Ctr.*, 889 N.W.2d 613, 618–21 (Neb. 2017); *Naylor Sr. Citizens Hous., LP v.*

---

[18] Not to mention those cases where our court has proceeded to decide an appeal despite the unauthorized practice of law on behalf of the appellant when no party has objected to the representation. *See, e.g.*, *Crompton Corp. v. All Star Feeds, Inc.*, No. 04-0003, 2005 WL 1224592, at *1 n.1 (Iowa Ct. App. May 25, 2005) (holding that issue was waived and that our court was not deprived of subject matter jurisdiction); *Med-Staff, Inc. v. Emp. Appeal Bd.*, No. 00-1137, 2001 WL 912723, at *3 (Iowa Ct. App. Aug. 15, 2001) (noting that while corporate officer's representation of corporation was permissible before the administrative agency, "such representation in the district or appellate courts could constitute the unauthorized practice of law" and cautioning the corporation "to obtain proper legal representation in any future court proceedings").

[19] Beyond the motion to continue trial that was under review, the supreme court also did not suggest that the earlier successful motion to recuse the district judge was a nullity that would need to be vacated because it was made through the unauthorized practice of law. *See Hawkeye Bank & Tr.*, 463 N.W.2d at 26.

*Sides Constr. Co.*, 423 S.W.3d 238, 246–50 (Mo. 2014); *Davenport v. Lee*, 72 S.W.3d 85, 92–94 (Ark. 2002); *Jadair Inc. v. U.S. Fire Ins.*, 562 N.W.2d 401, 409–11 (Wis. 1997); *Land Mgmt., Inc. v. Dep't of Envtl. Prot.*, 368 A.2d 602, 604 (Me. 1977). But others have rejected the nullity approach in favor of approaches that generally give the improperly represented party a chance to hire a lawyer—sometimes with some discretion on the matter for the court. *See Iriele v. Griffin*, 65 F.4th 1280, 1285 (11th Cir. 2023); *Alexander & Baldwin, LLC v. Armitage*, 508 P.3d 832, 845–49 (Haw. 2022); *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 406–10 (Pa. 2021); *Rental Prop. Mgmt. Servs. v. Hatcher*, 97 N.E.3d 319, 329 (Mass. 2018); *Downtown Disposal Servs., Inc. v. City of Chicago*, 979 N.E.2d 50, 54–58 (Ill. 2012); *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307, 310–11 (Minn. 2005); *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873–75 (5th Cir. 2004) (per curiam); *Torrey v. Leesburg Reg'l Med. Ctr.*, 769 So. 2d 1040, 1044–46 (Fla. 2000); *Boydston v. Strole Dev. Co.*, 969 P.2d 653, 655–56 (Ariz. 1998). And because the nullity approach is inconsistent with the current state of Iowa law, only our supreme court could choose to change course and adopt it now.[20]

---

[20] In *Rizzio*, we favorably cited precedent from other jurisdictions following the nullity approach as support for our holding that the adverse judgment against the improperly represented party should be voided. *See Rizzio*, 801 N.W.2d at 363. And in an unpublished opinion, we opined that a *default* judgment should have been entered against the improperly represented defendant because "any pleadings or motions filed on the corporation's behalf by [the nonlawyer] should have been stricken and considered void" before nevertheless vacating the adverse *summary judgment* that was entered as void—as the now-represented corporation urged on appeal. *Steensma*, 2018 WL 2725320, at *6. But this dicta does not provide a basis to override the governing Iowa precedent already discussed.

Bottom line, the district court erred in dismissing plaintiffs' claims without first giving them a chance to hire counsel. I would thus reverse the dismissal and remand for the district court to enter an order dismissing the case only if no lawyer appears for the plaintiffs within thirty days of that order.

## II.        Error Preservation

The majority avoids confronting the district court's error in dismissing plaintiffs' claims without first giving them a chance to hire counsel by holding that they—despite not being represented by counsel—failed to preserve error. For the reasons discussed above, I would hold that the court's inherent power to enforce the unauthorized practice of law only extends to authorize dismissals after ordering a plaintiff to hire counsel within a reasonable time. So I would say that resisting dismissal is sufficient to preserve error even if the party had not asked for time to hire a lawyer. Requiring more would be especially inappropriate when the party lacks counsel to advise that it has the right to ask for more time and when the dismissal is only required by a doctrine that exists to protect the party. But even if the plaintiffs had to preserve error separately on their argument that the court should have given them time to hire counsel, they did so here.

The plaintiffs first raised the issue that this case should not be dismissed without giving them a chance to hire counsel in their resistance to the defendants' motion to dismiss. To be sure, the argument was a bit convoluted and focused mainly on the harm that would be caused by dismissal of the children's parental consortium claims. Still, they aptly cited two key precedents. First, they pointed to *Hawkeye Bank and Trust* for the propositions that their filings, even if "made for another" by a nonlawyer, are not void and that "it is an abuse of discretion for the

trial court to dismiss a claim or void such filings without allowing the party a fair opportunity to cure any defect." Second, they cited the example of our court giving thirty days before dismissal of an appeal improperly filed by a nonlawyer on behalf of a corporation in *Timberline Builders.* And they succinctly summed up their argument that if the defendants were "concerned about the best interests of persons whose claims must be represented by a lawyer, the remedy would be something other than the dismissal of those claims."

The defendants' reply brief shows that they too read plaintiffs' resistance as raising the issue of getting time to hire an attorney rather than dismissal. Indeed, they said in that brief: "Plaintiffs assert that even if the Petition is procedurally improper, they should be afforded an opportunity to remedy their unauthorized practice of law." The defendants devoted a distinct two-page section of their brief to responding that the plaintiffs should *not* get time to hire an attorney. And at the hearing on their motion to dismiss, they again argued against giving plaintiffs time to cure the unauthorized practice of law.

So too did the plaintiffs return to this issue at the hearing, arguing that any unauthorized practice "does not make my causes of action or this case null, legally null and void, as the defense repeatedly argues." And the nonlawyer representing them again pointed to *Hawkeye Bank and Trust*, saying it "does allow for Plaintiffs to—I'm sorry, the legal term is slipping my mind—cure their cause of action."

If there were any doubt about precisely what the plaintiffs meant, it is removed by their response to the court's request for "proposed orders from both sides telling me factually and legally why your cause is just and why you think you should prevail here." In their proposed order—a copy of which was helpfully filed

in the docket so it is available for our review—the plaintiffs included alternative proposed reasoning that even if defendants were correct that the nonlawyer was engaged in the unauthorized practice of law, "then the appropriate remedy if pro se representation is not allowed is to accord the plaintiffs thirty days to hire licensed legal counsel and have counsel enter their appearance for the plaintiffs in this action." In line with their prior advocacy, plaintiffs asserted that this would "cure any defect that might otherwise support early dismissal" of their claims.

Given all this, I would hold that the plaintiffs raised the issue that immediate dismissal was not the proper remedy to the district court. They did so first at an appropriate time when the opposing side could—and did—fully respond. True, the post-hearing proposed order—as one might expect—presented the argument in its most refined form. But this was not a case where a party tried to float a new factual issue for the first time in a proposed order after trial, so I see no reason we should ignore any clarity provided by that filing. *Cf. Woods v. Charles Gabus Ford, Inc.*, 962 N.W.2d 1, 5–6 (Iowa 2021) (holding that it was too late to raise issue of proper training in a proposed order submitted after bench trial at which opposing party presented no evidence on the issue). After all, the district court had that proposed order and expressly said it would be looking to it for the plaintiffs' legal arguments. And the entire record before the district court—and us on appeal— leaves no doubt about what each party thought appropriate if the court found unauthorized practice of law: the defendants wanted immediate dismissal; the plaintiffs, a chance to hire counsel.

When the district court dismissed all the plaintiffs' claims because their petition was "a legal nullity," it decided the issue too. It rejected the plaintiffs'

arguments that the petition was not a nullity and they were thus entitled to have time to hire a lawyer. And it accepted the defendants' contrary arguments relying on this nullity approach to deny plaintiffs the chance to hire a lawyer—in fact, it expressly adopted all of them as its reasoning. Because the issue was raised and decided, it is preserved for our review.

The majority holds otherwise, thus allowing the unauthorized-practice-of-law prohibition to be weaponized to deprive the plaintiffs their day in court on their wrongful-death claims. Neither principles of error preservation nor unauthorized practice of law support this result. And so, I respectfully dissent.

Sandy, J., joins this dissent.